NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAUL B. BOCCONE, Plaintiff, v. EICHEN LEVINSON, LLP, BARRY R. EICHEN and DANIEL N. EPSTEIN, Defendants/Third-Party Plaintiffs, AMERICAN SAFETY CASUALTY INSURANCE COMPANY, Third-Party Defendant. | Civil Action No. 04-3871 (SRC) **OPINION** |

**CHESLER**, District Judge

This matter comes before the Court upon various motions and cross-motions for summary judgment. Defendants Eichen Levinson, LLP, Barry R. Eichen and Daniel N. Epstein (collectively, "Defendants") filed a motion for summary judgment (docket item #55) as to Plaintiff's claims against them, and Plaintiff has cross-moved for summary judgment (docket item #57). Third-Party Defendant American Safety Casualty Insurance Company ("American Safety") also filed a motion for summary judgment as to the third-party claims brought by Defendants (docket item #54), and Defendants cross-moved for summary judgment (docket item #55). The motions have been fully briefed, and the Court has considered all papers submitted. It rules based on those submissions pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Defendants' motion for summary judgment as to Plaintiff's claims and

as to its third-party claims will be granted in its entirety. Plaintiff's cross-motion will be denied, and Third-Party Defendant's motion for summary judgment will be denied.

## I. BACKGROUND

This action concerns the duty of an attorney to search for and satisfy any outstanding child support judgment against his or her client upon obtaining a monetary settlement in the client's favor. In other words, this action involves application of N.J.S.A. 2A:17-56.23b, New Jersey's child support judgment lien statute, the authority that establishes and defines that duty. Plaintiff, a child support judgment creditor, asserts that Defendants failed to comply with the statute and improperly distributed settlement funds they obtained for their client, Plaintiff's ex-wife Roxanna Perretti a/k/a Roxanna Godlewski a/k/a Roxanna Boccone (hereinafter, Plaintiff's ex-wife will be referred to as "Ms. Godlewski"). The third-party action filed by Defendants against their liability insurance carrier, American Safety, stems from the carrier's denial of the tender of defense and request for coverage made by Defendants in connection with Plaintiff's claims.

### A. Plaintiff's Claims Against Defendants

Defendants represented Ms. Godlewski in several matters, including two personal injury lawsuits that culminated in settlement. Mr. Eichen, a partner at defendant law firm Eichen Levinson, represented Ms. Godlewski in the personal injury suit captioned Perretti v. Miles. This suit was settled in April 2000, and payments out of the law firm's [1] escrow account were made to Ms. Godlewski in May 2000. (Boris Cert., Ex. A-C.) At the time of that settlement, a child

[1] Defendant law firm Eichen Levinson was known as Eichen Cahn in May 2000.

support judgment, entered in the case of Boccone v. Boccone, docket no. MID-FM-12-2074-96, was pending against Ms. Godlewski. It is undisputed that the Perretti v. Miles settlement funds were distributed in May 2000 without first satisfying that lien. Defendants contend that they became aware of the judgment around May 2002. However, Defendants admit that Mr. Epstein, another partner at defendant law firm, represented Ms. Godlewski in Boccone v. Boccone.

Upon their "discovery" of the outstanding judgment lien, Defendants began taking steps to satisfy the lien. (Boris Cert., Ex. E.) On May 8, 2002, a payment in the amount of $5,000 was made to the attorney trust account for Mr. Boccone's attorney. (Id., Ex. D.) In response to Mr. Eichen's request for information, the Middlesex County Probation Division ("Probation Division") informed him by letter of October 8, 2002 that the outstanding amount of child support judgment lien as of May 1, 2000 was $19,600.34. (Id., Ex. F.) Defendants remitted $20,000 to the Probation Division on January 9, 2003, together with proof of the $5,000 payment to Mr. Boccone's attorney and a request that the lien be adjusted accordingly. (Id., Ex. H.) Although Mr. Boccone refused to sign a warrant of satisfaction, acknowledging that the money remitted by Defendants satisfied the child support judgment, the funds were ultimately released to him by court order. (Pl. Opp'n to Defs' Mot. for Summ. J., Ex. 2.) In that May 15, 2003 order, the family court directed that $20,000 be released to Plaintiff and ordered that his failure to sign a warrant of satisfaction did not bar distribution of the funds. (Id.)

The second personal injury matter in which Defendants represented Ms. Godlewski, entitled Godlewski v. Delgado, was settled in June 2004. Defendants conducted a child support judgment search, which revealed that Ms. Godlewski was $8,692.84 in arrears on the child support judgment against her. (Boris Cert., Ex. I and J.) Once the defendant law firm received

the settlement monies on its client's behalf, a payment in the amount of $8,692.84 was made to the Probation Division on July 6, 2004. (Id., Ex. K and L.) On that same day, the balance of the settlement proceeds due Ms. Godlewski was forwarded to her. (Id., Ex. M.) Shortly thereafter, the Probation Division informed Defendants that, despite the payment, Mr. Boccone refused to sign a warrant of satisfaction and to accept the money, on the basis that he was challenging the amount of the judgment. (Id., Ex. N.)

On or about July 12, 2004, Plaintiff filed the action at bar in the United States District Court for the District of Maryland, and the case was transferred to this Court on or about August 13, 2004. Plaintiff's Complaint alleged that Defendants violated New Jersey's child support judgment lien statute and that they committed "theft by conversion." The Complaint was amended on April 21, 2006 to add a claim that Defendants were negligent in distributing the settlement funds without complying with the child support judgment lien statute.

Plaintiff and Defendants have cross-moved for summary judgment on the entirety of the Amended Complaint.

**B. Third-Party Action for Insurance Coverage**

During all relevant times, Defendants carried professional liability insurance provided by American Safety under policy no. 10PCM-PF-01522-03 (the "Policy"). (American Safety's Statement of Material. Facts, ¶ 3 and Ex. B; Boris Cert. Ex. P.) Defendants were served with Plaintiff's Complaint on or about August 26, 2004. On August 27, 2004, Defendants forwarded a copy of Plaintiff's Complaint to American Safety and demanded defense and indemnification against Plaintiff's claims under the Policy. (Boris Cert., Ex. O.) By letter of September 3, 2004, American Safety denied Defendants' tender and disclaimed coverage, stating that the Complaint

indicates that Defendants' conduct was intentional. (Id., Ex. Q.) In support of its decision, American Safety relied on the following two Policy exclusions:

> The **Company** will not pay **Damages** or **Claim Expenses** in connection with any **Claim**:
>
> A. arising out of any dishonest, fraudulent, criminal, intentional or malicious act, error, omission, or **Personal Injury** or deliberate misrepresentation committed by or at the direction of, or with the knowledge of the insured; . . .
>
> F. arising out of the **Insured's** conversion, misappropriation, embezzlement, commingling, defalcation or ethically improper use or disposal of funds or other property;

(Id., Ex. P (emphasis in original).)

Defendants asked American Safety to reconsider its decision, pointing to allegations in the Complaint, which, in Defendants' view, brought the claims within the coverage of the Policy. (Id., Ex. R.) American Safety did not respond.

Following motion practice, Defendants filed their Answer and Third Party Complaint on or about June 23, 2005. The Third Party Complaint asserted claims for breach of contract and breach of the duty of good faith against American Safety for denying coverage to Defendants. On May 3, 2006, Defendants renewed their request for defense and indemnification following Plaintiff's amendment of the Complaint to add a negligence claim. (Id., Ex. S.) Although American Safety responded that it was reviewing the claim, it never provided Defendants with its determination regarding coverage of the negligence claim. (Id., Ex. T and U.)

## II. CROSS-MOTIONS FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS AGAINST DEFENDANTS

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48. Pursuant to Federal Rule of Civil Procedure 56(e), the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence

proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993)).

**B. Child Support Judgment As Lien Against Proceeds of Settlement**

Plaintiff contends that Defendants have violated their duty under New Jersey's child support judgment lien statute by distributing the proceeds of the two personal injury lawsuit settlements they won for their client, Ms. Godlewski, without first satisfying the child support judgment Plaintiff had against her. The undisputed facts of this case clearly demonstrate, however, that Defendants have satisfied the lien, albeit belatedly with regard to the first personal injury settlement. The governing statute imposes no additional duty on them, and therefore, as a matter of law, judgment must be entered in Defendants' favor.

Under the law of the State of New Jersey, "a judgment for child support . . . docketed with the Clerk of the Superior Court" constitutes "a lien against the net proceeds of any settlement negotiated prior to or subsequent to the filing of a lawsuit . . ." N.J.S.A. 2A:17-56.23b(a).[2] The child support judgment lien statute further provides that the "lien shall stay the distribution of the net proceeds to the prevailing party or beneficiary until the child support is satisfied." Id. It places certain obligations on the attorney representing the beneficiary of a settlement but also limits the attorney's exposure to liability in connection with his or her execution of these obligations. In relevant part, the statute directs that upon obtaining a settlement for his or her client, and before distributing the net proceeds of that settlement, the

[2] In relevant part, the statute defines "net proceeds" as "any amount of money, in excess of $2,000, payable to the prevailing party or beneficiary after attorney fees, witness fees, court costs, fees for health care providers, payments to the Medicaid program . . . and other costs related to the lawsuit, inheritance or settlement are deducted from the award, proceeds or estate." N.J.S.A. 2A:17-55.23b(a).

attorney must initiate a search of child support judgments to determine if the client is a child support judgment debtor. Id.; N.J.S.A. 2A:17-56.23b(b)(2). If the search reveals that a child support judgment is outstanding against the settlement beneficiary, then that person's attorney

> shall contact the Probation Division of the Superior Court to arrange for the satisfaction of the child support judgment. The attorney . . . shall notify the prevailing party or beneficiary of the intent to satisfy the child support judgment prior to the disbursement of any funds to the prevailing party or beneficiary. Upon receipt of a warrant of satisfaction for the child support judgment, the attorney shall pay the balance of the settlement, judgment, award or inheritance to the prevailing party or beneficiary. If the net proceeds are less than the amount of the child support judgment, the entire amount of the net proceeds shall be paid to the Probation Division as partial satisfaction of the judgment.

N.J.S.A. 2A:17-56.23c.

There is no question in this case that Defendants distributed the proceeds of the second personal injury they obtained for Ms. Godlewski in accordance with the letter of the statute. Upon settling that lawsuit, they conducted a search to determine whether Ms. Godlewski was a child support judgment debtor, contacted the Probation Division to arrange for payment of the lien, and fully paid the arrears on the judgment against their client. On July 6, 2004, Defendants remitted the outstanding judgment amount to the Probation Division and, on the same date, disbursed settlement proceeds - less the lien amount - to Ms. Godlewski.

Plaintiff, however, seizes upon the timing of the distribution of the first settlement award as grounds for his claim that the statute was violated. On the one hand, it is clear that Defendants did not suspend the distribution of those proceeds until conducting a child support judgment search, as the statute requires. Had they done so in or about April or May 2000, when the

settlement was reached and monies were disbursed, Defendants would have discovered an outstanding child support judgment against their client and, according to the statute, would have been obligated to satisfy the judgment out of the net proceeds of the settlement before distributing the money to their client, the judgment debtor. It is also clear, on the other hand, that the outstanding judgment, which should have been satisfied before Ms. Godlewski received any proceeds from the settlement of the first personal injury suit, was later paid in full by Defendants. Admittedly, Ms. Godlewski's outstanding child support arrears were paid by Defendants over two-and-a-half years after they should have paid. Plaintiff, however, cannot complain of any injury or loss sustained as a result of the lateness. The judgment was satisfied, and Defendants' full payment of the child support arrears included statutory interest that had accrued.

______Plaintiff also argues for summary judgment in his favor, or at the very least tries to create an issue to defeat Defendants' motion, based on Defendants' distribution of the proceeds without obtaining a warrant of satisfaction. The child support judgment lien statute authorizes an attorney to distribute settlement proceeds to his or her client "upon receipt of a warrant of satisfaction for the child support judgment." N.J.S.A. 2A:17-56.23b(c). Plaintiff, however, refused to sign the warrant of satisfaction - in connection with both the 2002 and 2004 remittances by Defendants to the Probation Division - because he was challenging the amount of the child support judgment docketed against Ms. Godlewski, in a proceeding completely unrelated, of course, to the personal injury lawsuits handled by Defendants for Ms. Godlewski. (Complaint, ¶¶ 33, 46; Boris Cert., Ex. N.) Plaintiff cannot now complain that the statute has been violated to his detriment based on his own refusal to sign the warrant. His challenge of the judgment amount does not impact Defendants' performance of their duties.

The statute places an express limitation on an attorney's duties and liabilities with regard to payment of a child support judgment. In particular, the statute only requires that the attorney satisfy the judgment entered and docketed by the court. N.J.S.A. 2A:17-56.23b(a); see also Strickland v. 212 Corp. of N.J., 380 N.J. Super. 248, 255-56 (App. Div. 2005) (holding that obligation under the statute applies only to judgments *docketed* in New Jersey); Simpkins v. Saiani, 356 N.J. Super. 26, 35 (App. Div. 2002) (holding statute "pertains to docketed child support judgments"). The attorney "shall not be required to challenge a child support judgment unless retained by the prevailing party or beneficiary to do so." N.J.S.A. 2A:17-56.23b(g). According to the terms of the statute, satisfaction of a *docketed* child support judgment insulates an attorney from liability to his client (the judgment debtor) or to the client's creditors. N.J.S.A. 2A:17-56.23b(f). The evidence before the Court indisputably demonstrates that Defendants satisfied the docketed judgment in full.

Moreover, Plaintiff cannot, and does not, create an issue of fact as to Defendants' compliance with their statutory duties by raising the later revision of the amount of child support judgment by the January 20, 2006 Consent Order of the Superior Court of New Jersey, Hunterdon County, Family Part (the "2006 Consent Order"). (Pl. Opp'n to Defs' Mot. for Summ. J., Ex. 5.) The 2006 Consent Order states, among other things, that the proceeds of the two personal injury settlements were distributed without satisfying the outstanding child support judgment, that Plaintiff is entitled to $46,000 of the May 2000 award and $15,000 of the June 2004 award, and that as of December 19, 2005 the balance due on the child support judgment is $125,611.47. (Id.) The 2006 Consent Order was entered long after Defendants took the actions required of them by the child support judgment lien statute with respect to the two personal

injury settlements obtained for Ms. Godlewski. Its provisions do not undo those actions, nor do they retroactively revise the amount of child support judgment outstanding at the time Defendants searched for docketed judgments against their client and proceeded to pay those balances in full in 2002 and in 2004. See Strickland, 380 N.J. Super. at 255-56. Moreover, the 2006 Consent Order is not binding on Defendants. The fact that Plaintiff and Ms. Godlewski may have agreed in January 2006 on an increased amount of child support and on the portion of each settlement award to be given by Ms. Godlweski to Plaintiff bears no relevance on Defendants' performance of their duties under the governing statute, as discussed above.

In short, Defendants satisfied their obligations under the child support judgment lien statute, N.J.S.A. 2A:17-56.23b, and Plaintiff has failed to raise any genuine issue of material fact. Because no jury could find in Plaintiff's favor on his claims for violation of N.J.S.A. 2A:17-56.23b (Counts One and Two of the Amended Complaint), this Court finds that summary judgment for Defendants is warranted.

### C. Conversion Claim

Plaintiff alleges in his Amended Complaint that the distribution of the settlement funds from the first personal injury suit, Perretti v. Miles, in May 2000 without Plaintiff's knowledge and permission constituted theft by conversion[3] of money belonging to Plaintiff. The gravamen of this separately pled claim appears to the Court to be precisely the alleged violation asserted in

---

[3] Although Plaintiff pleads this claim as one "theft by conversion," the Court is not aware of any such tort claim recognized under New Jersey law, nor has Plaintiff cited any legal authority indicating the existence of such a claim. See Fainsbert v. Cuthbert, WL 2096057 at *4 (D.N.J. July 27, 2006) (observing that "theft by conversion" is not a cognizable claim).

Counts One and Two of the Amended Complaint, namely that Defendants breached their duties under the child support judgment lien statute and distributed settlement funds to their child support debtor client without first satisfying an outstanding child support judgment. To the extent the "conversion" claim re-asserts the child support judgment statute claim, it must be dismissed for the reasons expressed in Section B above.

Reading the Amended Complaint as liberally as possible, the Court finds that, to the extent Plaintiff is asserting a tort claim for conversion, Defendants are entitled to summary judgment. The essence of a conversion claim is that one party exercises the right of ownership over property belonging to another without that person's permission. "[T]he tort of conversion consists of the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights." Com'l Ins. Co. of Newark v. Apgar, 111 N.J. Super. 108, 114 (Law Div. 1970); see also McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 771 (3d Cir. 1990). Reviewing New Jersey law, this Court has articulated the test for a conversion claim as follows: "A claim for conversion is established if a party proves that the alleged offender assumed and exercised the right of ownership over the party's goods or chattels without permission, and excluded the owner from exercising dominion over them." Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 275 F.Supp.2d 543, 576 (D.N.J. 2003) (citing Barco Auto Leasing Corp. v. Holt, 228 N.J. Super. 77, 83 (App. Div. 1988).

Plaintiff could not, as a matter of law, prevail on his conversion claim because Defendants' escrow account funds (or any portion of them to which Plaintiff claims he was owed) were not property owned by Plaintiff. Any entitlement Plaintiff may have had to the

proceeds of Ms. Godlewski's first personal injury action settlement flowed from the child support judgment lien statute. As discussed, that statute required Defendants to satisfy the child support lien against their client out of the settlement proceeds, which were deposited into Defendants' escrow account. That statutory duty did not convert Defendants' escrow account, or the amount of the account representing the net proceeds of Ms. Godlewski's settlement, into Plaintiff's property. Plaintiff cannot establish one of the essential elements of the tort of conversion - ownership of goods or chattels - and therefore, his conversion claim cannot survive this motion for summary judgment.

Additionally, because Plaintiff cites the New Jersey Criminal Code as the basis for his conversion by theft claim, the Court addresses that aspect of his claim. The provision cited by Plaintiff, N.J.S.A. 2C:20-3, deals with theft by unlawful taking or disposition. The claim is futile for a number of reasons. One of the essential elements of this crime is that the property taken belonged to someone other than the alleged thief, and as stated, the settlement funds distributed out of Defendants' escrow account did not belong to Plaintiff. See State v. Trunfio, 58 N.J. Super. 445, 448 (App. Div. 1959). More importantly, it is fatal to Plaintiff's purported claim that there is no indication that the criminal statute for theft cited by Plaintiff authorizes a private cause of action. In re State Comm'n of Investigation, 108 N.J. 35, 41 (1987) (discussing that New Jersey courts apply same test articulated by United States Supreme Court for determining whether a criminal statute gives rise to private cause of action). This Court is not aware of any authority that holds that a private right of action exists for alleged violations of N.J.S.A. 2C:20-3, nor has Plaintiff cited any authority in support of his claim.

Accordingly, summary judgment will be granted for Defendants on Count Three of the Amended Complaint for "theft by conversion."

**D. Negligence**

Plaintiff's negligence claim, pled in Count Four of the Amended Complaint, fails as a matter of law. Plaintiff contends that Defendants' distribution of two personal injury awards obtained on behalf of Ms. Godlewski in a manner inconsistent with N.J.S.A. 2A:17-56.23b constitutes negligence. This claim contravenes the express terms of the child support judgment lien statute, which states that an attorney who satisfies a child support judgment from the net proceeds of a settlement "shall not be liable to the prevailing party or to that party's creditors." N.J.S.A. 2A:17-56.23b(f). In light of the statute's clear language limiting attorney exposure to liability in connection with the payment of the lien created by a judgment for child support against the net proceeds of a settlement, and in light of this Court's finding that the uncontroverted facts show satisfaction of the outstanding amount of the docketed judgment against Ms. Godlewski, the negligence claim cannot proceed. At best, it merely re-states the claims for violation of the child support judgment lien statute, with which this Court has already dealt. Accordingly, Count Four of the Amended Complaint must be dismissed with prejudice.

## III. THIRD-PARTY INSURANCE COVERAGE ACTION

The Court has reviewed the well-established jurisprudence of the State of New Jersey regarding an insurance carrier's duty to defend its insured. The duty to defend is triggered "when the complaint states a claim constituting a risk insured against." Danek v. Hommer, 28 N.J.

Super. 68, 77 (App. Div. 1953), aff'd o.b., 15 N.J. 573 (1954). To determine whether the insurer has a duty to defend, the Court must compare the allegations in the complaint with the language of the policy. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992). If the two correspond, then the insurer bears a duty to defend, regardless of the claim's actual merit. Id. In other words, the duty to defend is broader than the duty to indemnify. Danek, 28 N.J. Super. at 76-77. If a claim falls within the scope of coverage, the insurer must defend from the inception of the suit. Greenberg & Covitz v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 312 N.J. Super. 251, 258-59 (App. Div. 1998).

The New Jersey Supreme Court has observed that "a third party does not write the complaint to apprise the defendant's insurer of potential coverage." Voorhees, 128 N.J. at 174. Thus, whether a claim is covered depends on the nature of the claim, not on the "fortuity of how the plaintiff, a third party, chooses to phrase the complaint against the insured." S.L. Indus. v. Am. Motorists Ins. Co., 128 N.J. 188, 198-99 (1992). Facts which are outside the complaint but which are known to the insurer may trigger the duty to defend. Id. at 199. These rules of determining coverage give meaning to New Jersey's policy of finding coverage in accord with the insured's objectively reasonable expectations. Id. at 198-99.

Consistent with this policy, it is well-settled that all doubts or ambiguities should be resolved in favor of coverage. Voorhees, 128 N.J. at 173; L.C.S. v. Lexington Ins. Co., 371 N.J. Super. 482, 491 (App. Div. 2004); Danek, 28 N.J. Super. at 77. It is also well-settled that if the complaint states multiple alternative causes of action, "the duty to defend will continue until every covered claim is eliminated." Voorhees, 128 N.J. at 174. Moreover, if the complaint

states conflicting theories of recovery, one which requires coverage and one which does not, the carrier may defend under a reservation of rights, but it is not relieved from his obligation to assume its insured's defense simply because coverage may not obtain under one of the pled theories. L.C.S., 371 N.J. Super. at 497.

In both Counts One and Two, Plaintiff asserts that Defendants violated the child support judgment lien statute, N.J.S.A. 2A:17-56.23b, by "concealing" the distribution the receipt (Count One) and distribution (Count Two) of settlement proceeds for the two personal injury suits they handled for Ms. Godlewski. The statute is specifically cited by Plaintiff throughout the Complaint. It is clear that although Plaintiff couches his claims in terms of fraud and deceit, Counts One and Two of the Complaint essentially state a claim for breach of the duty imposed by the child support judgment lien statute, that is, that Defendants did not do what the statute required and satisfy the child support judgment lien out of the settlement proceeds. Such a claim, for breach of a professional practice obligation imposed by statute on attorneys, falls within the scope of coverage afforded by the Policy. The Court's reading of the Complaint and its interpretation of the essential nature of Plaintiff's claims are bolstered by the express legislative intent to limit attorneys' exposure to liability in connection with the performance of duties prescribed by the child support judgment lien statute. See N.J.S.A. 2A:17-56.23b(e) and (f); New Jersey Senate Women's Issues, Children and Family Services Committee Legislative Notes, S., No. 220-L.2000, c.81. Plaintiff's assertion of a conversion or "theft by conversion" claim does not allow American Safety to disclaim coverage based on the fraudulent, criminal or intentional act exclusion or the conversion exclusion cited by American Safety in response to

Defendants' tender of defense. The law is clear that an insurer must assume the defense when a covered claim has been asserted against the insured while reserving its rights to disclaim coverage as to the arguably excluded claims.

Thus, the Court finds that American Safety has breached its obligation to provide coverage as required by the Policy. The Court also finds that its denial of coverage constitutes bad faith. An insurer, such as American Safety, bears a duty to exercise good faith in processing its insured's claims. Pickett v. Lloyd's, 131 N.J. 457, 467 (1993). A claim of bad faith denial of benefits requires that the insured demonstrate "the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim . . . knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless indifference to facts or to proofs submitted by the insured." Id. at 473 (quoting Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I. 1980)). The claim cannot be sustained if interpretation of the insurance policy is "fairly debatable." Id. The Court finds that whether the Policy covered Plaintiff's claims against Defendants was not a "fairly debatable" question, particularly after the Complaint was amended to add a negligence claim. Defendants renewed their request for coverage when the Complaint was amended, but American Safety failed to inform Defendants of their ultimate determination of this request and thus, in effect, disclaimed coverage. The Court finds that, as a matter of law, American Safety lacked a reasonable basis to deny coverage.

Accordingly, summary judgment in favor of Defendants is warranted on all three counts of their Third Party Complaint against American Safety.

## IV. CONCLUSION

For the foregoing reasons, this Court grants Defendants' motion for summary judgment as to Plaintiff's claims against it. It also grants Defendants' motion for summary judgment on the claims asserted in its third-party action against American Safety. Accordingly, Plaintiff's motion for summary judgment and American Safety's motion for summary judgment are denied. An appropriate form of order will be filed together with this Opinion.

s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: December 26, 2006